The Honorable John C. Coughenour

1

2

3

4

5

6

7

8

9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   MARCO VILLALOBOS and
ANGELA YBARRA, husband and wife,

11              Plaintiffs,                    NO.  C09-1450 JCC

12       vs.

13   OLD REPUBLIC  NATIONAL TITLE          SECOND AMENDED
INSURANCE COMPANY, as trustee for     COMPLAINT FOR DAMAGES
14   Deutsche Bank National Trust          AND INJUNCTIVE RELIEF

15   BARCLAYS CAPITAL, INC, a New
York corporation;
16

17   DEUTSCHE BANK NATIONAL
TRUST COMPANY, as assignee of
18   WMC Mortgage Corporation;

19   WMC MORTGAGE CORPORATION,
a dissolved California corporation;
20

21   LOAN NETWORK LLC, a Washington
limited liability company

22   JUAN LUIS PERAZA-ZAMUDIO, an
individual;
23

24   FIDELITY NATIONAL TITLE, a
Washington company;
25

JOHN DOES NO. 1 – 10

26              Defendants.

27

28   SECOND AMENDED COMPLAINT FOR DAMAGES                    **GENDLER & MANN, LLP**
AND INJUNCTIVE RELIEF (NO.  C09-1450 JCC)  - 1        1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone:  (206) 621-8868
Fax: (206) 621-0512

I.      INTRODUCTION

This case responds to the predatory practices arising out of the mortgage-backed securitization model, a system where investment banks provide funding for lenders to originate loans quickly through deceptive and fraudulent conduct.  Defendants Barclays Capital and Deutsche Bank, as securitizing agents of the trust that is attempting to foreclose on the Plaintiffs' home, are responsible for the unlawful conduct perpetrated by WMC Mortgage Corp. and its agents in the origination of the Villalobos' loans. Defendants Barclays, Deutsche Bank, and WMC entered into an agreement to incentivize and profit from abusive lending practices.  The Villalobos bring this action to stop the foreclosure of their home, recover actual and statutory damages, reasonable attorneys' fees, costs, and such other relief as this court deems appropriate.

II.      PARTIES

1.      Plaintiff Marco Villalobos is a natural person residing in the State of Washington and is married to Plaintiff Angela Ybarra.  Mr. Villalobos was born and attended school in Costa Rica, is not proficient in English language reading and writing, and is financially unsophisticated.

2.    Plaintiff Angela Ybarra is a natural person residing in the State of Washington and is married to Plaintiff Marco Villalobos.  Ms. Ybarra has only limited formal education and is financially unsophisticated.

3.      Plaintiffs Marco Villalobos and Angela Ybarra (Villalobos) own and reside at property located at 755 Queen Ave. NE, Renton, WA 98056.

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO.  C09-1450 JCC) - 2

4.      Defendant Old Republic National Title Insurance Company (Old Republic) is the successor trustee for Deutsche Bank National Trust in the foreclosure action commenced against the Villalobos.  Defendant Old Republic is a corporation organized under the laws of Delaware doing business in Washington and is subject to the jurisdiction of this court.

5.      Barclays Capital, Inc. (Barclays) is a corporation organized under the laws of Connecticut doing business in Washington.  At all times relevant to this complaint, Barclays was the administrator of Sutton Funding LLC (Sutton), a special purpose entity formed in 2005 for the purpose of acquiring, holding, disposing of and making loans secured by mortgages and related assets and administered by Barclays.  At all times relevant to this complaint, Barclays owned Securitized Asset Backed Receivables (SABR), a special purpose vehicle and Barclays subsidiary created for the purpose of transferring Plaintiffs' loans into a pool of loans subsequently sold to investors.  At all times relevant to this complaint, Barclays d/b/a HomEq Servicing operated in Washington as the servicer of the Villalobos' loans.  At all times relevant to this complaint, Barclays was a citizen of a state other than Washington doing business in Washington and is subject to the jurisdiction of this court.

6.      Defendant Deutsche Bank National Trust (Deutsche Bank) is the assignee of WMC Mortgage Corporation, and Trustee under Pooling and Servicing Agreement dated as of December 11, 2006, Securitized Asset Back Receivables LLC Trust 2006-WM4, and is located at 1761 E. St. Andrews Place, Santa Ana, Orange County, California 92705. Deutsche Bank instructed the trustee Old Republic to foreclose upon the subject property in

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO.  C09-1450 JCC) - 3

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

2009. At all times relevant to this complaint, Deutsche Bank was a citizen of a state other than Washington doing business in Washington and is subject to the jurisdiction of this court.

7.     Defendant WMC Mortgage LLC (WMC) is a limited liability company and wholesale originator of subprime residential mortgages located in California. WMC is a wholly owned subsidiary of GE Bank and successor in interest to WMC Mortgage Corp., a dissolved California corporation. At all times relevant to this complaint, WMC was doing business in Washington, is subject to the jurisdiction of this court, and was a citizen of a state other than Washington.

8.     Defendant Loan Network LLC (Loan Network) is a Washington limited liability company doing business in Washington as a mortgage broker under Washington License number 510-MB-23807-24780 and is subject to the jurisdiction of this court.

9.     Defendant Juan Luis Peraza-Zamudio (Peraza) is an individual formerly residing at 23506 NE 185th Pl., Woodinville, WA 98007 and a former employee of Loan Network LLC. At all times relevant to this complaint, Peraza did business in Washington and is subject to the jurisdiction of this court.

10.     Defendant Fidelity National Title (Fidelity) is a Washington corporation doing business in Washington and is subject to the jurisdiction of this court. At all times relevant to this complaint, Fidelity was the escrow company involved in the purchase and sale of the property located at 755 Queen Ave. NE, Renton, WA 98056.

11.     Plaintiffs are ignorant of the true names and capacities of defendants sued herein as John Does 1-10, and therefore sue these defendants by such fictitious names.

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO. C09-1450 JCC) - 4

Plaintiffs will amend this complaint to allege their true names and capacities when they have been ascertained.  On information and belief, each fictitiously named defendant is responsible in some manner for the occurrences herein alleged, and plaintiffs' injuries as herein alleged were proximately caused by the acts and/or omissions of each of them.

12.     On information and belief, at all times herein mentioned each defendant was acting as an agent, servant, joint venturer, employee, of the remaining co-defendants and was at all times acting within the course and scope of said agency, service, joint venture or employment.   On further information and belief, each defendant had knowledge of, authorized, ratified, or took part in the conduct of each other defendant.

III.     VENUE AND JURISDICTION

13.     Plaintiffs commenced this action in King County Superior Court pursuant to RCW 2.08.010 and RCW 4.12.010.  This matter was removed by Defendant Deutsche Bank to the U.S. District Court of the Western District of Washington pursuant to 28 U.S.C. § 1441(b) on or around October 14, 2009.  This matter involves a dispute between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and jurisdiction is proper pursuant to 28 U.S.C. § 1332(a).  The subject property is situated within the judicial district of the U.S. District Court of the Western District of Washington and venue is proper pursuant to 28 U.S.C. § 1391(a)(2).  Jurisdiction over the state claims is proper under 28 U.S.C. § 1367 because the factual matters underlying the state and federal claims are closely related, making disposition of all claims proper and necessary.

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO.  C09-1450 JCC) - 5

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

#### IV.    ALLEGATIONS OF FACT

The Agreement

14.    Defendant WMC Mortgage Corp. (WMC) is a wholesale originator of subprime residential mortgages.  In 2006, along with Plaintiffs' loans, WMC originated $33.2 Billion in subprime loans and issued $21.6 Billion in Mortgage Backed Securities.

15.    Mortgage Backed Securities are bonds secured by aggregated mortgages. They are created when investment banks take pools of home loans, carve up the cash flows from receivables and convert flows into bonds that are secured by mortgages.

16.    On July 1, 2006, Defendant WMC entered into a Mortgage Purchasing Agreement (Agreement) to sell a pool of subprime residential loans to Sutton Funding LLC (Sutton).

17.    Based on information and belief, WMC entered into the Agreement before originating any of the loans it committed to sell to Sutton, and proceeded to originate the subject loans knowing that it would quickly sell the loans for the fluid capital it needed to fund current and future loans.

18.    Based on information and belief, WMC and Sutton knew when they entered into the Agreement that Sutton was affiliated with and administered by Defendant Barclays.  Both parties also knew that Sutton would quickly transfer the pool of loans to Securitized Asset Backed Receivables, LLC (SABR), a special purpose vehicle wholly owned by Barclays.

19.    Based on information and belief, WMC and Sutton executed a series of confirmation documents that described the number of loans to be sold, the principal

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO.  C09-1450 JCC) - 6

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

1    balance of the pool of loans and loan closing dates of October 1, 2006, November 1, 2006,

2    and December 1, 2006.

3        20.    Based on information and belief, the Agreement also included underwriting

4    guidelines that required the subject loans to have all the markers of subprime loans,

5    including but not limited to: adjustable rates, pre-payment penalties, interest-only

6

7    payments, balloon payments, and high loan to value ratios.

8        21.    Based on information and belief, the Agreement and pending pay-off, along

9    with the loan closing schedule and underwriting standards, created both the means and the

10   incentive for WMC to originate a large number of subprime loans in a three to five-month

11   period.

12

13       22     Based on information and belief, Barclays knew that WMC, as a warehouse

14   lender, would have to contract with aggressive mortgage brokers to identify, recruit, and

15   commit a high number of subprime borrowers during the three to five-month period.

16

17       23.    Barclays, through its affiliate Sutton, entered into the Agreement with

18   WMC after having received Advisory Letter 2003-03 (Letter) from the Office of the

19   Comptroller of the Currency (OCC), warning national banks, federal branches of foreign

20   banks and their operating subsidiaries to avoid predatory lending practices in brokered and

21   purchased loans.

22       24.    The Letter describes unsound lending practices and addresses steps banks

23   should take to mitigate their risk for liability associated with their purchase of predatory

24

25   residential mortgage loans and use of mortgage brokers to originate loans.

26

27

28   SECOND AMENDED COMPLAINT FOR DAMAGES
     AND INJUNCTIVE RELIEF (NO.  C09-1450 JCC)  - 7

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

25.     Based on information and belief when Barclays contracted with WMC it knew or should have known about WMC's reputation as a predatory lender.

26.     Documents filed with the U.S. Securities and Exchange Commission in 2006 show that WMC originated over $3.3 Billion in residential subprime loans between the Agreement date of July 1, 2006 and the last closing date of December 1, 2006, for deposit into three SABR trusts:  SABR Trust 2006-WM2, 2006-WM3, and 2006-WM4. The $3.3 Billion figure represents 17,321 loans originated by WMC and sold to SABR for securitization over a five-month period, including Plaintiffs Villalobos' loans.

The Villalobos' Loan Origination

27.     Mr. Villalobos works full-time as a groundskeeper for an apartment complex. His wife, Ms. Ybarra, works the night shift as a part time clerk at a local retailer and cares for their young sons during the day. They earn a combined annual income of $54,000.

28.     In July 2006, an acquaintance of Mr. Villalobos, Luis Castro, indicated that he wanted to sell his home and encouraged the Villalobos to purchase it.

29.     Mr. Castro introduced the Villalobos to Defendant Peraza, whom Mr. Castro described as his real estate agent.  Speaking exclusively in Spanish, Peraza told the Villalobos that he could arrange both the real estate sale purchase and the mortgage loan that the Villalobos needed to finance their new home.

30.     Although the Villalobos were unfamiliar with financial matters and had never previously owned a home, they were reassured by Peraza's repeated promises that he would guide them through the process. Like many members of their community, the

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO.  C09-1450 JCC)  - 8

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone:  (206) 621-8868
Fax: (206) 621-0512

Villalobos had heard Peraza's advertisements on the Spanish language radio station and seen his ads guaranteeing financing in *El Mundo*, the local Spanish language newspaper.

31.    Despite the fact that Peraza neither was a licensed realtor nor associated with one, Peraza represented both Castro and the Villalobos in the sale of the property.  He helped Castro establish the sale price of $294,000.00, communicated the offer to the Villalobos and encouraged them to accept the full price offer.  Peraza then prepared the Purchase and Sale Agreement and ensured that each party signed the contract on July 7, 2006.

32.    Peraza rushed the Villalobos into signing the purchase agreement by telling them their opportunity for financing was limited and that they would lose the chance to own a home.  At Peraza's direction, the Villalobos agreed to purchase the home without conducting an inspection, viewing other properties or making a counteroffer on the sale price.

33.    Peraza transitioned from his role as a real estate agent to his role as the Villalobos' mortgage broker, stating unequivocally that the Villalobos would qualify for a loan that would require no down payment, no out of pocket fees, and no paperwork.

34.    Peraza was working for Defendant Loan Network, LLC during the transaction.  Loan Network received all mortgage broker fees associated with the Villalobos' loans.

35.    The Villalobos were committed to working with Peraza out of a false sense of urgency he created about special loan rates and because of his assurances that he was an experienced mortgage professional with strong contacts in the lending community.  The

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO.  C09-1450 JCC)  - 9

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

Villalobos gave Peraza extensive information about their income and living expenses, providing him with access to their personal financial documents, including social security numbers, employment check stubs and bank statements.

36.     In response to the information they provided, Peraza told the Villalobos they qualified for a loan for the entire purchase price and that monthly payments would be about $2000.   The Villalobos understood that Peraza would help them obtain affordable financing that was based on their actual income.  Peraza, however, failed to inform the Villalobos about the other loan terms, including adjusting rates, costs, third party fees and commissions.

37.     On August 1, 2006, using Loan Network letterhead, Peraza's associate sent Fidelity National Title Company a typed Request to Open Escrow (Request) for the Villalobos transaction.  The Request identified Peraza as a loan officer for Loan Network and indicated that no realtors were associated with the transaction.

38.     Another Peraza associate, Saundra White, hand-wrote additional information on the Request, indicating that she, too, was associated with Loan Network and that WMC would act as the lender for two loans extended to the Villalobos.

39.     The Request was accompanied by a typed but unsigned and undated Uniform Residential Loan Application, which misidentified the Villalobos' employers and inflated their salary by more than $1000 a month.  The Application further indicated that Peraza was an employee of Loan Network LLC and that he completed the Application during a face-to-face interview with the Villalobos on August 1st. However, the Villalobos did not see the Loan Application until August 4, 2006.

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO.  C09-1450 JCC) - 10

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

40.     On August 3, 2006 Saundra White sent Fidelity an email advising them that the loan documents from WMC were available for download and that WMC requested a "rush" on completing the documents.

41.     WMC employed WMC Direct to process loan applications and approvals. WMC Direct was an internet-based loan submission system that offered mortgage brokers near immediate underwriting decisions.  By 2000, WMC was underwriting and processing 100% of its loans online.

42.     On August 4, 2006 the Villalobos learned they had been approved for a loan when they received a phone call from Tia Bently, the escrow representative from Fidelity National Title.  The Villalobos were surprised by this call because they had done nothing more than supply their income information to Peraza days earlier.

43.     Tia Bently told the Villalobos that they must meet her that very day at a Baja Fresh restaurant in Bellevue in order to sign the loan documents from WMC.  The Villalobos attempted to call Peraza to ask questions about the loan, but could not locate him.  Relying on Peraza's assurances that he represented their best interests, the Villalobos met Bently and executed all of the loan documents she presented.

44.     Bently did not speak Spanish and provided no information about the content of the documents, other than to point out where the Villalobos were to sign.  The Villalobos felt great pressure to sign the documents or lose the home.

45.     The numerous documents the Villalobos signed during the Baja Fresh meeting included: the Promissory Notes for two loans from WMC, two Deeds of Trust granting a security interest to WMC, the Final HUD-1 Settlement Statements, the Good

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO.  C09-1450 JCC) - 11

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

Faith Estimates, the loan application to WMC, the Excise Tax Affidavit, Closing Agreements and Escrow Instructions, and the Truth in Lending Disclosure Statements from WMC.

46.     Although many of these documents bear the signature and seal of notary named Candy Lara, no notary was present at the signing.  The Deeds of Trust, Power of Attorney, Signature Affidavits, and Errors and Omissions Agreement contain signed statements by Candy Lara certifying that the Villalobos appeared before her on August 4, 2006 to sign said documents.  Candy Lara made this certification even though she, and Tia Bentley, knew the statement was untrue.

47.     The Villalobos did not understand, nor did they have time to inspect, the terms in the stack of documents they signed on August 4, 2006.  They believed the terms reflected their verbal agreement with Peraza: a loan totaling $294,000.00, the full purchase price of the home, with payments of about $2,000.00 per month. However, the Villalobos were not aware of the steep fees, hidden costs, and the exploding interest rate that awaited them. They were also unaware that other, more affordable loan terms were available to them – terms that would have corresponded with their credit score of 650.

48.     Based on information and belief, WMC contracted with Loan Network to find borrowers and originate loans in Washington.  Loan Network in turn paid Peraza to recruit borrowers from the Spanish-speaking community and processed his loans without regard for the unlawful methods or high-pressure tactics Peraza employed.

49.     Based on information and belief, Peraza intended to finance the Villalobos' purchase through two loans from WMC from the beginning, and had instructions from

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO.  C09-1450 JCC) - 12

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

1    Loan Network and WMC to expedite the process so that WMC could comply with the

2    Barclays Purchase Agreement.

3          Predatory Loan Terms

4          50.    On August 7, 2006 WMC financed the full amount of the Villalobos' loans

5    for $294,000.00. The loans were secured by two deeds of trust against the Villalobos'

6    home: the first deed secured an obligation for $235,200.00 (Loan No. 11638220) and the

7    second for $58,800.00 (Loan No. 11638230). The first loan has a 30-year adjustable rate

8    loan.  Interest-only payments are required for the first five years, but the interest rate

9    jumped after only two years, beginning at 6.9 percent, adjusting every six months until it

10   reaches 13.49 percent. That loan carries a 20 percent prepayment penalty during the first

11   two years. The second loan has a fixed interest rate of 9.9% for a term of 15 years and a

12   balloon payment due at the end of the term for $48,520.21.

13

14

15         51.    The Villalobos did not discover the onerous terms of the loan until their first

16   loan payment increased by 42% in September 2008 and they tried to refinance with another

17   bank. The Villalobos were surprised to learn about the prepayment penalty and the fact

18   their payments were interest-only. They were unable to refinance the loan because the

19   property appraised lower than their principal balance.

20

21         52.    The rate adjustment required payments exceeding 50% of the Villalobos'

22   gross monthly income. They made the payments for as long as they could, but a death in

23   the family and a temporary reduction in work hours made it impossible to continue and

24   they defaulted on the loan in January 2009.

25

26

27

28   SECOND AMENDED COMPLAINT FOR DAMAGES
     AND INJUNCTIVE RELIEF (NO.  C09-1450 JCC)  - 13

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

53.     Barclays, d/b/a HomEq Servicing, who had serviced the loans since the beginning, denied the Villalobos' application to modify the loan under the Making Home Affordable Program.

54.     Desperate, they turned to the Home Foreclosure Legal Aid Project for help. The Home Foreclosure Legal Aid Project is a collaboration between the Washington State Bar Association and the Northwest Justice Project, designed to prevent foreclosure by pairing eligible homeowners with pro bono attorneys.   Attorneys Brendan Donckers and Eulalia Sotelo represent Plaintiffs through the Project.

55.     The Villalobos did not understand the true predatory nature of the transaction until obtaining counsel.  Defendants Peraza, Loan Network, Fidelity and WMC rushed the Villalobos through the loan process in such a manner that it was virtually impossible to comply with federal and state laws designed to help consumers make informed decisions.

56.     The Truth in Lending Act Disclosure associated with each loan misstates material terms of the loans.  The Disclosures improperly exclude an appraisal fee from the Finance Charge calculation.  Escrow disbursement records show that the Villalobos inexplicably paid $400 for a property appraisal *twice*, once to Thomas Love and another time to Love Appraisals (owned and operated by Thomas Love).

57.     The Villalobos never received a copy of the property appraisal report and there is no evidence that the appraisal, if it did in fact occur during the six-day escrow period, merited a charge of $400 - the very top of the cost range for Washington in 2006. There is no evidence showing that the Villalobos received or needed *two* appraisals.  The

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO.  C09-1450 JCC)  - 14

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

$400 appraisal fee on the first loan's Itemization of Amount Financed is unreasonably high and the excess should have been calculated as a Finance Charge. The additional $400 appraisal fee on the second loan Disclosure is spurious and thus an excessive Finance Charge.

58.     The settlement fee on each TILA Disclosure is also inaccurate. The final HUD-1 Settlement Statement lists the settlement fee as $680.63 plus $250.00 for Notary Candy Lara, for a total of $930.63. However, the Itemization of Amount Financed for the first loan lists the settlement fee as $2325 and $350 for the second loan, totaling $2675. The settlement fee is listed as a Finance Charge for both loans, but there is no accounting for the difference of over $1700. This discrepancy likely hides additional broker compensation and it should have been calculated as such on the TILA Disclosures.

59.     Title insurance fees are also inflated on both Disclosures and, as such, should have been calculated as a Finance Charge instead of part of the Amount Financed. The Itemization of Amount Financed for the first loan lists the title insurance fee as $588 and for the second loan as $147, for a total of $735. Not only does the Final HUD-1 Settlement Statement list the *total* title insurance fee as $578, the 2006 average title insurance fee in Washington was $573. There is no justification for the excessive fee, and the overcharge should have been calculated as a Finance Charge on the Disclosures.

60.     Disbursement records from escrow show that Loan Network received two checks for credit reports for the Villalobos: one for $19 and another for $50. The HUD-1 Settlement Statement again underreports the total charge for the credit report as $19, but the TILA Itemization lists the fee as $19 for the first loan and $50 for the second. In 2006,

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO.  C09-1450 JCC) - 15

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

the average cost of obtaining a credit report was $21. The excessive charge should have been calculated as a Finance Charge on the Disclosures.

61.     These incorrect and inappropriate fees resulted in miscalculated and improperly disclosed Annual Percentage Rates, Finance Charges, and Amounts Financed on the Federal Truth in Lending Disclosure Statements. In each instance, the TILA violations were apparent on the face of the documents, putting Loan Network, Fidelity National Title, WMC Mortgage, and its assignees Deutsche Bank and Barclays on notice that the subject loan transactions involved deceptive and misleading practices and fraud.

62.     The Villalobos received the Good Faith Estimates for their loans at the same time they received the Final Settlement Statement, in violation of the Real Estate Settlement and Procedures Act (RESPA). The Good Faith Estimates listed Loan Network, LLC as the mortgage broker, but the HUD-1 Settlement Statement falsely states that the Mortgage Broker Fees, Loan Origination, and Loan Application Processing Fees, a total of $7,368.80 (2.5% of the loan), were distributed to WMC Mortgage Corporation, also in violation of RESPA.

63.     WMC and Barclays knew or should have known that they could not originate, sell, and securitize the high number of subprime loans required in the Purchase Agreement in a short time without employing abusive lending practices, such as using high-pressure sales tactics, steering vulnerable borrowers to high cost loans, and neglecting to provide the disclosures borrowers needed to make an informed decision.

64.     WMC relied on Loan Network to act as an agent to identify borrowers and originate subprime loans. Based on information and belief, WMC intentionally contracted

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO. C09-1450 JCC) - 16

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone:  (206) 621-8868
Fax: (206) 621-0512

high volume mortgage brokers like Loan Network and made full use of their questionable

lending practices and ties to relatively untapped communities of potential borrowers.

Profit Structure

65.     On or about December 28, 2006, Barclays Capital, as Underwriter of SABR

Trust 2006-WM4, filed a supplemental prospectus (prospectus) with the Securities and

Exchange Commission, detailing the offering of mortgage-backed securities through the

trust. The Villalobos' loans were included as an asset in that trust.

66.     SABR deposited a total principal balance of $1,355,443,368 of WMC-

originated loans into the trust. These securities were made available to investors beginning

on December 28, 2006.

67.     On or about December 1, 2006, Defendants Deutsche Bank, Barclays, and

WMC created a Pooling and Servicing Agreement (PSA) detailing the rights and

responsibilities of each party in connection with the securities offered under the Trust.

68.     The PSA describes a framework whereby 1) WMC agreed to originate

mortgages; 2) WMC, through Sutton, transferred mortgages to SABR; 3) SABR transferred

all right, title, and interest to the mortgages to Deutsche Bank for the purpose of holding

the mortgages in trust; and 4) SABR sold mortgage-backed securities to certificate holders

which were held in trust by Deutsche Bank.

69.     Under the PSA, Barclays d/b/a HomEq Servicing, was the Master Servicer

of all mortgages in the Trust.

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO. C09-1450 JCC) - 17

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

70.     Deutsche was responsible as trustee for reviewing and certifying that each mortgage file was complete and working with Barclays d/b/a HomEq Servicing to ensure that Barclays carried out its servicing duties.

71.     The PSA also outlines the profit sharing agreement, whereby WMC, Deutsche, and Barclays all benefited from the origination and securitization of mortgages. Barclays receives five tenths of a percent (0.5%) of all interest collected as the servicer, while Deutsche receives a fee based on a percentage of the aggregate outstanding principal balance of the mortgage loans and bank-owned properties along with the aggregate in certain deposit accounts.

72.     The arrangement results in a compensation structure based on the performance of the underlying mortgage loans, enabling the beneficiaries of the PSA to profit most when borrowers pay only interest and the aggregate outstanding principal remains high.

73.     The PSA also describes WMC's responsibility to repurchase non-performing loans from the trust and the compensation it received for the loans it sold to SABR.

74.     The PSA is an explicit agreement to carry on an enterprise for profit by the different parties involved in the trust.  Each of the parties fulfills a specific function within the trust and all have control over their particular role.  WMC, Barclays, and Deutsche agreed to share in responsibilities as well as in the loss and profits of the trust venture.

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO.  C09-1450 JCC)  - 18

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

Trustee Sale

75.     On May 6, 2009, Mortgage Electronic Registration Systems, Inc. (MERS), presumably in its capacity as nominee for WMC, signed and caused to be recorded an Assignment of Deed of Trust /Mortgage, assigning beneficial interest of the deed of trust for the Villalobos' first loan to Deutsche Bank National Trust as Trustee under Pooling and Servicing Agreement dated as of December 1, 2006, Securitized Asset Backed Receivables LLC Trust 2006-WM4 Mortgage Pass-Through Certificates, Series 2006-WM4.

76.     Also on May 6, 2009, MERS signed and caused to be recorded an Appointment of Successor Trustee, appointing Old Republic as successor trustee for the Villalobos' first loan.

77.     The Notice of Trustee scheduling a sale for August 7, 2009 was also recorded on May 6, 2009.

78.     A representative of Old Republic dated and signed the Notice of Trustee's Sale on May 4, 2009, even though the Appointment of Successor Trustee granting Old Republic the authority to initiate the trustee sale was not effective until May 6, 2009, the date the Appointment was recorded.

79.     Further, the representative of Old Republic purportedly signed the Notice of Trustee's sale in Orange, California, but the notary who acknowledged the signature failed to indicate the county and state in which the document was signed, rendering the acknowledgement incomplete.

V.      COUNT ONE: UNFAIR BUSINESS PRACTICES IN VIOLATION OF
CONSUMER PROTECTION ACT

Peraza and Loan Network

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO. C09-1450 JCC) - 19

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

80.     Plaintiffs reallege and incorporate by reference each and every allegation in the preceding Paragraphs of this Complaint.

81.     Defendants Peraza and Loan Network directly and indirectly engaged in unfair and deceptive practices in violation of RCW 19.86.020, including but not limited to:

1)     Targeting financially unsophisticated and vulnerable consumers for inappropriate credit products;

2)     Misrepresenting the true costs and risks of the subject loans and their inappropriateness for the Villalobos;

3) Misrepresenting status as a licensed realtor and mortgage broker;

4) Misrepresenting the Villalobos' income and employment information on their loan application;

5) Misrepresenting the urgency and limited opportunity for obtaining financing;

6) Disbursing funds belonging to the Villalobos when Defendants knew or should have known the subject loan transaction involved an improper scheme to deprive the Villalobos of money and personal property;

7)  Violating RCW 19.146.357 by permitting and engaging in loan origination activity without a license;

8)  Violating the Truth in Lending Act (TILA) 15 U.S.C. §1638 and Regulation Z, 12 C.F.R. § 226.17, by misrepresenting material terms on the TILA Disclosure;

9)  Violating the Real Estate Settlement Procedures Act 12 U.S.C. § 2607 and Regulation X, 24 C.F.R. § 3500.7, by collecting unearned fees and failing to

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO.  C09-1450 JCC)  - 20

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone:  (206) 621-8868
Fax: (206) 621-0512

provide a timely and proper Good Faith Estimates, also a violation of RCW 19.146.030

10)  Originating two loans instead of one in an effort to collect excessive fees and circumvent the anti-deficiency provisions of the Deed of Trust Act, Chapter 61.24 RCW

82.    The conduct of Defendants Peraza and Loan Network violated RCW 19.146.0201.

83.    Defendants Peraza's and Loan Network's unfair and deceptive practices affected the public interest and resulted in injury to the Plaintiffs' property.

84.    The inflated interest rate and interest-only payments forced the Villalobos to make 30 months of unaffordable payments with no reduction to their principal obligation. The prepayment penalty further made it impossible for the Villalobos to refinance their loans.

COUNT TWO: UNFAIR BUSINESS PRACTICES IN VIOLATION OF<br>CONSUMER PROTECTION ACT

<u>WMC Mortgage Corp.</u>

85.    Plaintiffs reallege and incorporate by reference each and every allegation in the preceding Paragraphs of this Complaint.

86.    Defendant WMC is a licensee pursuant to the WA Consumer Loan Act (CLA) RCW 31.04.208, and engaged in conduct that meets the definition of "making a loan" under RCW 31.04.015.

87.    Defendant WMC directly and indirectly engaged in behavior that constitutes unfair and deceptive conduct under RCW 19.86.020, including but not limited to:

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO. C09-1450 JCC) - 21

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

1) Rushing the Villalobos through the loan application and escrow process in order to sell the loans quickly to Barclays;

2) Making loans based primarily on the foreclosure value of the property, without regard to the Villalobos' ability to repay according to the loans' terms

3) Violating the Truth in Lending Act (TILA) 15 U.S.C. §1638 and Regulation Z, 12 C.F.R. § 226.17, by misrepresenting material terms on the TILA Disclosures

4) Violating the Real Estate Settlement Procedures Act 12 U.S.C. § 2607 and Regulation X, 24 C.F.R. § 3500.7, by collecting unearned fees and failing to provide a timely and proper Good Faith Estimates, also a violation of RCW 19.146.030.

88. Defendant WMC's conduct violated the Consumer Loan Act RCW 31.04.027.

89. Under RCW 31.04.208, a violation of the Consumer Loan Act is a per se violation of the Consumer Protection Act, and establishes harm to the public interest.

90. Defendant WMC's unfair and deceptive practices affected the public interest and resulted in injury to the Plaintiffs' property.

91. The inflated interest rate and interest-only payments forced the Villalobos to make 30 months of unaffordable payments with no reduction to their principal obligation. The prepayment penalty further made it impossible for the Villalobos to refinance their loans.

COUNT THREE: UNFAIR BUSINESS PRACTICES IN VIOLATION OF CONSUMER PROTECTION ACT

Fidelity National Title

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO. C09-1450 JCC) - 22

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

92.     Plaintiffs reallege and incorporate by reference each and every allegation in the preceding Paragraphs of this Complaint.

93.     Defendant Fidelity engaged in behavior that meets the definition of "settlement services" under RESPA 12 U.S.C. § 12602.

94.     Defendant Fidelity directly and indirectly engaged in unfair and deceptive practices in violation of RCW 19.86.020 including but not limited to:

1) Falsely providing and ratifying notarized documents in violation of RCW 42.44.080;

2) Rushing the Villalobos to sign loan documents in a public place without identifying the documents in a way that the Villalobos could understand;

3) Falsely stating settlement charges in violation of RESPA 12 U.S.C. § 2607 and Regulation X, 24 C.F.R. § 3500.7;

4) Collecting and giving unearned fees in violation of RESPA 12 U.S.C. § 2607 and Regulation X, 24 C.F.R. § 3500.7

95.     Defendant Fidelity's conduct is injurious to the public interest and injured Plaintiffs by adding unnecessary costs to the loan transaction.

COUNT FOUR: FRAUD

<u>Peraza, Loan Network, and WMC Mortgage</u>

96.     Plaintiffs reallege and incorporate by reference each and every allegation in the preceding Paragraphs of this Complaint

97.     Defendant Peraza falsely represented material terms of the Villalobos' loan, including the adjustable rates, costs, fees, and commissions associated with the loans.

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO. C09-1450 JCC) - 23

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

98.     Defendant Peraza falsely represented the material information on the loan application he prepared for the Villalobos including Plaintiffs' income and employment information.

99.     Defendant Peraza falsely represented the urgency of originating the loans and the risks associated with them.

100.    Defendant Peraza made false representations described in this Complaint with knowledge of their falsity and in contemplation of Plaintiffs' reliance upon them.

101.    Defendant Peraza falsely represented the costs, fees, commissions, and risks associated with the Villalobos' loans by failing to provide borrowers with statutorily required material disclosures.

102.    Plaintiffs were ignorant of Defendant Peraza's false representations and relied upon the truth of Defendant Peraza's representations.

103.    Plaintiffs were damaged by Defendant Peraza's false representations.

104.    Defendant Peraza violated each element of fraud, entitling the Villalobos to damages.

105.    Defendant Loan Network, LLC employed Defendant Peraza and is liable for the wrongful conduct of employees conducted during the course of business under a theory of respondeat superior. Defendant Loan Network, LLC is liable to the Villalobos for damages caused by Peraza's fraudulent conduct.

106.    Defendants Peraza and Loan Network acted on behalf of and as agents of Defendant WMC Mortgage. Defendant WMC is liable to the Villalobos for the damages

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO. C09-1450 JCC) - 24

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

caused by the fraudulent conduct of Defendants Peraza and Loan Network based on an agency theory.

COUNT FIVE: FRAUD

<u>WMC Mortgage Corp.</u>

107.    Plaintiffs reallege and incorporate by reference each and every allegation in the preceding Paragraphs of this Complaint.

108.    Defendant WMC falsely represented the costs, fees, commissions, and risks associated with the Villalobos' loans by failing to provide borrowers with statutorily required material disclosures under 15 USC § 1638 and Regulation Z, 12 C.F.R. § 226.17.

109.    Defendant WMC falsely represented the costs, fees, and risks associated with the Villalobos' loans by collecting unearned fees and providing an untimely and improper Good Faith Estimates under 12 USC § 2607 and Regulation X, 24 C.F.R. § 3500.7.

110.    Defendant WMC made false representations described in this Complaint with knowledge of their falsity and in contemplation of Plaintiffs' reliance upon them

111.    Plaintiffs were ignorant of Defendant WMC's false representations and relied upon the truth of Defendant WMC's representations.

112.    Plaintiffs were damaged by Defendant WMC's false representations.

113.    The inflated interest rate and interest-only payments forced the Villalobos to make 30 months of unaffordable payments with no reduction to their principal obligation. The prepayment penalty further made it impossible for the Villalobos to refinance their loans.

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO. C09-1450 JCC) - 25

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

114.    Defendant WMC violated each element of fraud, entitling the Villalobos to damages.

## COUNT SIX: BREACH OF FIDUCIARY DUTIES

Peraza, Loan Network, and WMC

115.    Plaintiffs reallege and incorporate by reference each and every allegation in the preceding Paragraphs of this Complaint.

116.    Mortgage brokers owe common law duties of loyalty and care.

117.    Under RCW 19.146.095(1), mortgage brokers owe borrowers fiduciary duties of loyalty, the utmost good faith, and reasonable care.

118.    Under RCW 19.146.095(1)(a), mortgage brokers shall not accept, provide, or charge any undisclosed compensation.

119.    Under RCW 19.146.095(1)(b), mortgage brokers must carry out all lawful instructions provided by the borrower;

120.    Defendants Peraza and Loan Network breached fiduciary duties to act with loyalty, good faith, and care as the Plaintiffs' mortgage broker by failing to carry out the Villalobos' instructions to secure affordable financing, misrepresenting the true costs and risks of the subject loans, misrepresenting Peraza's status as a licensed realtor and mortgage broker, falsifying the Villalobos' income and employment information on their loan application, and misrepresenting the urgency for obtaining financing.

121.    The Villalobos were injured as a result of Defendant Peraza's breach of fiduciary duties.

122.    Defendant Peraza is liable to the Plaintiffs for breaching his fiduciary duties.

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO. C09-1450 JCC) - 26

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

123.   Defendant Loan Network, LLC employed Defendant Peraza and is liable for the wrongful conduct of employees conducted during the course of business under a theory of respondeat superior. Defendant Loan Network, LLC is liable to the Villalobos for damages caused by Peraza's wrongful conduct.

124.   Defendant Loan Network was an agent of Defendant WMC Mortgage. Defendant WMC is liable to the Villalobos for damages caused by Peraza's and Loan Network's breach of fiduciary duties.

COUNT SEVEN: BREACH OF FIDUCIARY DUTIES

Fidelity

125.   Plaintiffs reallege and incorporate by reference each and every allegation in the preceding Paragraphs of this Complaint

126.   Defendant Fidelity National Title owes parties to a real estate transaction fiduciary duties of loyalty and care.

127.   Defendant Fidelity National Title breached fiduciary duties to act with loyalty and care as Plaintiffs' escrow agent.

128.   The Villalobos were injured as a result of Defendant Fidelity National Title's breach of fiduciary duties.

129.   Defendant Fidelity National Title is liable to the Plaintiffs for breaching fiduciary duties.

COUNT EIGHT: VIOLATIONS OF DEED OF TRUST ACT

130.   Plaintiffs reallege and incorporate by reference each and every allegation in the preceding Paragraphs of this Complaint.

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO. C09-1450 JCC) - 27

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

131.    RCW 61.24.010(2) vests a successor trustee with all powers of an original trustee upon proper recording of the appointment of trustee in each county in which the deed of trust is recorded.

132.    Defendant Old Republic issued a Notice of Trustee Sale on May 4, 2006, but the appointment of trustee was not properly recorded until May 6, 2006.

133.    Defendant Old Republic issued the Notice of Trustee Sale before the appointment of trustee was properly recorded with the King County Recorder's office and had no authority to issue a Notice of Trustee Sale.

134.    RCW 61.24.040(1)(f) requires the Notice of Trustee's Sale to contain an acknowledgement.

135.    RCW 42.44.090 requires the name of the jurisdiction in which the notarial act is performed to be included in the acknowledgment.

136.    The acknowledgment to the Notice of Trustee's Sale did not include the name of the jurisdiction in which the notarial act was performed.

137.    The Notice of Trustee Sale failed to comply with the procedures outlined in Chapter 61.24 RCW and is invalid.

COUNT NINE: PROHIBITED PRACTICES UNDER CHAPTER 18.44 RCW

138.    Plaintiffs reallege and incorporate by reference each and every allegation in the preceding Paragraphs of this Complaint.

139.    RCW 18.44.301(1) prohibits directly or indirectly employing any scheme, device, or artifice to defraud or mislead borrowers.

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO.  C09-1450 JCC)  - 28

140.    RCW 18.44.301(2) prohibits directly or indirectly engaging in any unfair or deceptive practice toward any person.

141.    RCW 18.44.301(11) prohibits the failure to comply with any requirement of any applicable federal or state act.

142.    Defendant Fidelity National Title violated RCW 18.44.301 by engaging in behavior that includes but is not limited to:

1)    Falsely providing and ratifying notarized documents;

2)    Rushing the Villalobos to sign loan documents at a public place without identifying the documents in a way the Villalobos could understand;

3)    Falsely stating settlement charges in violation of RESPA 12 U.S.C. § 2607 and regulation X, 24 C.F.R. § 3500.7;

4)    Collecting and giving unearned fees in violation of RESPA 12 U.S.C. § 2607 and Regulation X, 24 C.F.R. § 3500.7

143.    Defendant Fidelity National Title is liable to the Villalobos.

COUNT TEN: AIDING AND ABETTING

144.    Plaintiffs reallege and incorporate by reference each and every allegation in the preceding Paragraphs of this Complaint.

145.    Liability for aiding and abetting requires that a defendant know of the primary tortfeasor's deceptive and fraudulent conduct; and the defendant substantially assist the primary tortfeasor's deceptive and fraudulent conduct.

146.    As more fully set forth above, Defendants Peraza, Loan Network, WMC and Fidelity engaged in deceptive and fraudulent acts that caused injury to the Villalobos.

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO. C09-1450 JCC) - 29

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone: (206) 621-8868
Fax: (206) 621-0512

147.     Deutsche Bank and Barclays were generally aware of their role as part of an overall tortious activity. Defendants Deutsche Bank and Barclays knew there was high investor demand for subprime loans because those loans generated lucrative income streams.  Defendants Deutsche Bank and Barclays knew that WMC originated over 17,000 subprime loans over a five-month period for the sole purpose of selling those loans to the Barclays and Deutsche trusts and that there was a high likelihood that the loans involved predatory terms.  Further, violations of state and federal laws, including the absence of correct TILA disclosures and RESPA documents, were apparent on the face of the loan files Deutsche Bank and Barclays accepted into the securitized trust.

148.     Defendants Deutsche and Barclays gave substantial assistance to the Defendants that engaged in the fraudulent and deceptive conduct by purchasing the Villalobos' predatory loans immediately after origination.  Deutsche Bank and Barclays quickly converted the lucrative interest-only cash flow from the Villalobos' loans into bonds that they sold to investors for a profit.  Deutsche Bank and Barclays facilitated and benefitted from WMC's predatory practices.

149.     Defendants Deutsche Bank and Barclays are liable to the Plaintiffs for aiding and abetting WMC's deceptive and fraudulent conduct.

COUNT ELEVEN: CIVIL CONSPIRACY

150.     Plaintiffs reallege and incorporate by reference each and every allegation in the preceding Paragraphs of this Complaint.

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO. C09-1450 JCC) - 30

GENDLER & MANN, LLP
1424 Fourth Avenue, Suite 715
Seattle, WA 98101
Phone:  (206) 621-8868
Fax: (206) 621-0512

151.   Defendants WMC, Deutsche, and Barclays entered into agreements to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, but by unlawful means, in connection with the subject loan transaction.

152.   As more fully set forth in Counts I through VII above, Plaintiffs' complaint sets forth actionable claims based on fraud and unfair and deceptive practices, which were accomplished through the above-described agreements.

153.   Pursuant to the Purchase Agreement and subsequent Pooling and Servicing Agreement regarding Securitized Asset Backed Receivable LLC Trust 2006-WM4, Defendants Barclays and WMC combined to originate and securitize billions of dollars worth of loans with subprime borrowers over a three to five month period.  Barclays and WMC understood that WMC would have to originate these loans employing the most expeditious means possible, such as compressing the escrow process, omitting crucial borrower disclosures, and misrepresenting material loan terms.

154.   Pursuant to the Pooling and Servicing Agreement Defendants Barclays, Deutsche and WMC entered into an agreement to securitize and profit from a pool of loans characterized by abusive lending practices - predatory terms, incorrect TILA disclosures, and a high risk of default.

155.   Plaintiffs have suffered injury as the proximate result of deceptive and fraudulent conduct of Defendants Deutsche Bank, Barclays, and WMC and Defendants Deutsche Bank, Barclays, and WMC are jointly and severally liable.

COUNT TWELVE: JOINT VENTURE

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO. C09-1450 JCC) - 31

156.    Plaintiffs reallege and incorporate by reference each and every allegation in the preceding Paragraphs of this Complaint.

157.    Defendants Deutsche Bank, Barclays, and WMC entered into a joint venture as shown in the Pooling and Servicing Agreement regarding Securitized Asset Backed Receivable LLC Trust 2006-WM4.

158.    Defendants shared a common purpose to profit from the securitization of a pool of subprime loans, including the Villalobos' predatory loans.

159.    As evidenced in the Pooling and Servicing Agreement, each entity profited from the common purpose, shared responsibilities to achieve the common purpose, and exercised some degree of control over the other participants.

160.    Defendants Barclays, Deutsche Bank, and WMC each assumed a role in the venture necessary to enable all parties to profit from the underlying performance of the loans.

161.    Plaintiffs have suffered injury as the result of the unlawful conduct of Defendants Barclays, Deutsche Bank, and WMC and the participants are jointly and severally liable.

XII.    REQUEST FOR RELIEF

Having stated their allegations and claims, plaintiffs request the following relief:

1.    An award of temporary, preliminary, and permanent injunctive relief to restrain the trustee's sale pending resolution of this matter;

2.    An order invalidating the Notice of Trustee Sale issued by Defendant Old Republic and dated May 4, 2006;

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO. C09-1450 JCC) - 32

3.     An award of damages in an amount to be proved at trial against Defendants to compensate Plaintiffs for their loss resulting from the Defendants' misconduct and deceptive practices, including but not limited to excessive charges, fees and costs plus the difference between the interest rate and terms of the loans the Villalobos received versus the interested rate and loan terms for which the Villalobos were qualified;

4.     An award of treble damages against Defendants pursuant to RCW 19.86.090;

5.     An award of costs and reasonable attorneys' fees pursuant to RCW 19.86.090;

6.     For such other relief as the court deems just and equitable.

Dated this 8th day of October, 2010.

By:     s/Brendan W. Donckers
        WSBA No. 39406
        Gendler & Mann, LLP
        1424 Fourth Avenue, Suite 715
        Seattle, WA 98101
        Telephone: (206) 621-8868
        Fax: (206) 621-0512
        E-mail: brendan@gendlermann.com

        (Attorneys for Plaintiffs)

By:     s/Eulalia Sotelo
        WSBA No. 41407
        Northwest Justice Project
        401 Second Ave. S., Suite 407
        Seattle, WA 98104-3811
        Telephone: (206) 464-1519, ext. 643
        Fax: (206) 624-7501
        E-mail: lilis@nwjustice.org

        (Attorneys for Plaintiffs)

SECOND AMENDED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF (NO. C09-1450 JCC) - 33